IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:22-CV-665-RJC-DCK

| | |
|---|---|
| SANDRA VALENCIA, BRENDA GEIGER, EVA PEPAJ, JESSICA NICHOLE ROCKWELL, LUCY PINDER, MONICA LEIGH BURKHARDT, PAOLA CANAS, ALYSSA NOBRIGA, and MARIANA DAVALOS,<br><br>Plaintiffs,<br><br>v.<br><br>MIDNITE RODEO, LLC, d/b/a MIDNITE RODEO, SEAN SCOGGINS, and PAUL ALEXANDER SCOGGINS,<br><br>Defendants. | MEMORANDUM AND RECOMMENDATION |

**THIS MATTER IS BEFORE THE COURT** on Defendants' "Motion To Dismiss" (Document No. 12). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be granted in part and denied in part.

**I. BACKGROUND**

Plaintiffs Sandra Valencia ("Valencia"), Brenda Geiger ("Geiger"), Eva Pepaj ("Pepaj"), Jessica Nichole Rockwell ("Rockwell"), Lucy Pinder ("Pinder"), Monica Leigh Burkhardt ("Burkhardt"), Paola Canas ("Canas"), Alyssa Nobigra ("Nobriga"), and Mariana Davalos ("Davalos") (collectively, "Plaintiffs") initiated this action with the filing of a "Complaint" (Document No. 1) on December 13, 2022. In their Complaint, Plaintiffs state various claims against Defendants Midnite Rodeo, LLC ("Midnite Rodeo"), Sean Scoggins, and Paul Alexander

Scoggins ("the Scoggins Defendants") (collectively, "Defendants"): (1) for false advertising in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (2) for false association in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (3) for misappropriation in violation of the common law right of privacy; (4) for violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 *et seq.*; (5) for negligence, gross negligence, and *respondeat superior*; (6) for conversion; (7) for unjust enrichment; and (8) for quantum meruit. See (Document No. 1).

Plaintiffs' claims arise out of allegations that Defendants "misappropriated, and intentionally altered" their pictures for the purpose of making "it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants." Id. at pp. 4-5. Plaintiffs contend that they are each "well-known professional model[s] who earn[] [their] livelihood[s] modeling and licensing [their] Images to companies, magazines and individuals for the purpose of advertising products and services." Id. at p. 4. Defendants "operate[] Midnite Rodeo, where they are engaged in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain the business' clientele." Id. at p. 13. Notably, none of the Plaintiffs were ever "employed at Midnite Rodeo," nor were they ever "hired to endorse Midnite Rodeo, [or were] otherwise associated or affiliated with Midnite Rodeo." Id. at p. 6. Plaintiffs have never "received remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation." Id. at p. 5. Defendants' posting of Plaintiffs' images to their social media accounts was done "without the knowledge or consent of Plaintiffs." Id. at p. 14.

Defendants' "Motion To Dismiss" (Document No. 12) was filed February 3, 2023. "Plaintiffs' Memorandum Of Law In Opposition To Defendants' Motion To Dismiss Portions Of

2

The Complaint" (Document No. 14) was filed February 17, 2023. Defendants' "Memorandum In Reply To Plaintiffs' Response To Defendants' Motion To Dismiss Plaintiffs' Complaint" (Document No. 15) was filed February 24, 2023.

The pending motion has been fully briefed and is ripe for review and a recommended disposition to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

1. **Timeliness**

Defendants argue that "[m]any of Plaintiffs' claims are barred by the applicable statutes of limitations and should be dismissed." (Document No. 12-1, p. 5). The argument appears to be two-fold: first, that the doctrine of laches bars Plaintiffs' Lanham Act claims,[1] and second, that the applicable North Carolina statutes of limitations bar the state law claims of six of the Plaintiffs (Valencia, Geiger, Pepaj, Rockwell, Canas, and Nobriga). The undersigned will analyze the arguments for dismissal accordingly.

At the outset, the undersigned notes that "[a] statute of limitations defense may properly be asserted in a Rule 12(b)(6) motion to dismiss if it appears on the face of the complaint that such a statute bars the claim." Arku v. Wells Fargo Bank, Nat'l Ass'n, 3:22-CV-225-RJC-DCK, 621 F. Supp. 3d 602, 608 (W.D.N.C. 2022) (quoting Horton v. Carolina Medicorp, 472 S.E.2d 778 (1996)).

   **A. Lanham Act Claims**

---

[1] It is not clear from Defendants' briefing whether they are seeking to dismiss the Lanham Act claims of *all* Plaintiffs, or merely the claims of the six Plaintiffs named in various sections of the brief. See (Document No. 12, p. 1); (Document No. 12-1, p. 6). Ultimately, at least for purposes of the motion to dismiss as explained in the undersigned's analysis, the lack of clarity is not consequential.

4

"The Lanham Act does not '…expressly incorporate a limitations period for § 43(a) claims.'" Geiger v. Abarca Family Inc., 2022 WL 4242838, at * (E.D. Va. July 29, 2022) (quoting Belmora LLC v. Bayer Consumer Care AG, 987 F.3d 284, 293 (4th Cir. 2021)). "Laches is presumed to bar § 43(a) claims filed outside the analogous limitations period." Geiger, 2022 WL 4242838, at *14 (quoting Belmora, 987 F.3d at 294). In North Carolina, N.C. Gen. Stat. § 1-52 creates a three-year statute of limitations for many state law claims, including negligence and breach of contract-related actions. C.f., WorkingFilms, Inc. v. Working Narratives, Inc., 2021 WL 1196189, at *4 (E.D.N.C. Mar. 29, 2021) (applying a four-year statute of limitations even though the court could not find "case law regarding any time limitations on a common law claim for trademark infringement and unfair competition"). "If the presumption applies to a plaintiff's claims, then the court must determine if the presumption can be overcome." Geiger, 2022 WL 4242838, at *14 (quoting Belmora, 987 F.3d at 295). A three-part test assists the court in evaluating whether the laches presumption can be overcome. Id. First, did "the plaintiff [know] of the defendant's use of the images"? Id. Second, was "plaintiff's delay in challenging the use of plaintiff's images [] inexcusable or unreasonable"? Id. And third, has the defendant "been unduly prejudiced" by the delay? Id. Importantly, though, this test obviously requires examination of various facts – not all of which may be apparent from the face of the complaint. For that reason, it will only be appropriate "in certain circumstances [to rule] on an affirmative defense such as laches on a motion to dismiss." Geiger, 2022 WL 4242838, at *15.

Here, Plaintiffs attached the images at issue to the Complaint, and they contain the dates on which the images were posted to social media. See (Document Nos. 1-3 – 1-11). However, it is not clear from the face of the Complaint at what point Plaintiffs became aware of the use of these images, and consequently, whether there was any delay between acquiring knowledge of the

5

use of the images and if any delay caused prejudice. Thus, it is inappropriate at this stage of the litigation to evaluate whether laches should or should not bar Plaintiffs' Lanham Act claims. Not all relevant facts are apparent from the face of the Complaint, and discovery is warranted. The undersigned will therefore respectfully recommend that Defendants' motion to dismiss Plaintiffs' Lanham Act claims based on a laches defense be denied.

### B. State Law Claims

Defendants' second timeliness argument concerns the state law claims made by six Plaintiffs – namely Valencia, Geiger, Rockwell, Canas, Pepaj, and Nobriga.[2] Defendants assert that the state statute of limitations has run for each of the state law claims, including misappropriation, negligence, conversion, unjust enrichment, quantum meruit, and unfair and deceptive trade practices. See (Document No. 12-1, pp. 7-11). Given that Plaintiffs attach to their Complaint exhibits which show the date on which the images in dispute were posted, Defendants contend that it is thus clear from the face of the Complaint that the statute of limitations bars the six aforementioned Plaintiffs from asserting the state law claims. See (Document No. 1-3, 1-4, 1-5, 1-6, 1-9, 1-10). The undersigned includes a table below indicating the relevant dates of alleged publication of Plaintiffs' images on Defendants' social media page, based on the exhibits attached to the Complaint. Id. The table mirrors some entries in the table seen in Defendants' brief. See (Document No. 12-1, p. 2).

| Plaintiff | Date of First Post | Date of Last Post | Exhibit |
|---|---|---|---|
| Valencia | January 2014 | March 2014 | A |
| Geiger | May 2012 | September 2012 | B |

---

[2] Defendants have not moved for dismissal of the state law claims of the remaining three Plaintiffs (Burkhardt, Davalos, and Pinder). Therefore, the undersigned will not analyze the statute of limitations as it relates to these three Plaintiffs' claims.

| Pepaj | October 2017 | November 2018 | C |
| Rockwell | November 2018 | N/A | D |
| Canas | March 2013 | N/A | G |
| Nobriga | September 2017 | N/A | H |

Plaintiffs do not appear to contest what the relevant statutes of limitations are for each respective state law claim, but rather contend that the continuing wrong doctrine tolls the statute of limitations in this case. Plaintiffs alternatively argue that North Carolina's discovery rule suggests that the statute of limitations did not begin to run until Plaintiffs could have reasonably become aware of Defendants' use of the images. See (Document No. 14, pp. 3-6). The undersigned will separately analyze each state law claim below.

    **i.   Negligence**

Under North Carolina law, the statute of limitations for negligence is three years. Birtha v. Stonemor, North Carolina, LLC, 727 S.E.2d 1, 7 (N.C. Ct. App. 2012). And, "[a] cause of action based on negligence accrues when the wrong giving rise to the right to bring suit is committed, even though the damages at that time be nominal and the injuries cannot be discovered until a later date." Id. (quoting Harrold v. Dowd, 561 S.E.2d 914, 918 (N.C. Ct. App. 2002)). Based on the date the Complaint was filed – December 13, 2022 – any claim for conduct occurring before December 13, 2019 would fall outside the statute of limitations period and would be barred. See (Document No. 1). Each of the six Plaintiffs named in the table above thus did not file their claims within the relevant statute of limitations for negligence, and dismissal is recommended.

    **ii.   Conversion**

The statute of limitations for conversion under North Carolina law is three years. See Stratton v. Royal Bank of Canada, 712 S.E.2d 221, 227 (N.C. Ct. App. 2011) (citing N.C. Gen. Stat. § 1-52(4)). "As a general rule, the claim accrues, and the statute of limitations begins to run, when the unauthorized assumption and exercise of ownership occurs – not when the plaintiff discovers the conversion." Id. Each of the six above-named Plaintiffs is thus time-barred from bringing their conversion claims, and the undersigned respectfully recommends dismissal.

### iii. Unjust Enrichment

The statute of limitations for unjust enrichment in North Carolina is also three years. See Stratton, 712 S.E.2d at 228 (citing Housecalls Home Health Care, Inc. v. State, 682 S.E.2d 741, 744 (N.C. Ct. App. 2009); N.C. Gen. Stat. §§ 1-52(1), (4)). And, unjust enrichment claims accrue "when the wrong is complete, even though the injured party did not then know the wrong had been committed." Housecalls Home Health Care, Inc., 682 S.E.2d at 744 (quoting Shepard v. Ocwen Fed. Bank, FSB, 617 S.E.2d 61, 63 (2005)). As with the above claims, the six Plaintiffs already named are time-barred from bringing unjust enrichment claims, and dismissal is recommended.

### iv. Quantum Meruit

The statute of limitations for quantum meruit claims is three years. Thomas v. Thomas, 401 S.E.2d 396, 398 (N.C. Ct. App. 1991) (citing N.C. Gen. Stat. § 1-52(1)). Quantum meruit claims accrue "as the services are rendered." Id. Given that the relevant conduct for which Plaintiff contends that "Defendants have not compensated Plaintiffs" is Defendants' unauthorized use of Plaintiffs' images, the dates in the chart above are relevant – thus, the quantum meruit claims asserted by the six Plaintiffs already mentioned are time-barred. The undersigned thus recommends dismissal of these claims.

### v. Unfair and Deceptive Trade Practices

The statute of limitations for a UDTPA claim is four years. Thomas v. Great Southern Life Ins. Co., 3:20-CV-593-MOC-DCK, 2021 WL 1316073, at *6 (W.D.N.C. Apr. 8, 2021) (citing N.C. Gen. Stat. § 75-16.2). "When a UDTPA claim closely resembles a breach of contract, the [statute of limitations] runs on the date of the breach." Id. However, "[f]or UDTPA claims based on fraud or misrepresentation, a more lenient standard is used," and the claim accrues "at the time the fraud is discovered or should have been discovered with the exercise of reasonable diligence." Id. (quoting Nash v. Motorola Comm'ns & Elecs., Inc., 385 S.E.2d 537, 538 (N.C. Ct. App. 1989)). Here, it is not apparent from the face of the Complaint *when* Plaintiffs discovered that Defendants were allegedly misrepresenting to the public that Plaintiffs were associated with them via posting their images on their social media page. Thus, without the necessary facts to evaluate when the UDTPA claims accrued and thus whether the statute of limitations has run for these six Plaintiffs' UDTPA claims, the undersigned will respectfully recommend that Defendants' motion to dismiss these claims be denied.

### vi. Misappropriation

The statute of limitations for misappropriation or invasion of privacy claims in North Carolina is three years. Losing v. Food Lion, L.L.C., 648 S.E.2d 261, 284 (N.C. Ct. App. 2007). And, although Plaintiffs cite to Alexander v. City of Greensboro for the proposition that the discovery rule should apply to Plaintiffs' misappropriation claims such that the statute of limitations does not begin to run until Plaintiffs could reasonably have become aware of Defendants' use of their images, their reliance on the case is incorrect. 2011 WL 3360644, at *13, n.21 (M.D.N.C. Aug. 3, 2011). The discovery rule provides that "for personal injury or physical damage to claimant's property, the cause of action…shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become

9

apparent to the claimant, whichever event first occurs." N.C. Gen. Stat. § 1-52(16). First, the Alexander case did not *explicitly* hold that the discovery rule applies to misappropriation claims – it just suggested that there *could* be a connection between the plaintiff's discovery of the relevant conduct and the "time of accrual" of the claim that precluded the entry of summary judgment in that case. 2011 WL 3360644, at *13. Furthermore, the North Carolina Court of Appeals in Birtha held that the discovery rule does not apply to cases in which there is no "bodily harm or physical damage to [a plaintiff's] property." 727 S.E.2d at 7. Thus, Plaintiffs' argument that the discovery rule applies to each of the state law claims pleaded here is incorrect – there is no bodily harm or physical damage alleged, merely reputational damage. As a result, given that the six Plaintiffs named have claims that accrued over three years before the Complaint was filed, the undersigned respectfully recommends dismissal of the six Plaintiffs' misappropriation claims.

### vii. The Continuing Wrong Doctrine Does Not Apply

The undersigned has recommended dismissal of the negligence, conversion, unjust enrichment, quantum meruit, and misappropriation claims of Plaintiffs Valencia, Geiger, Pepaj, Rockwell, Canas, and Nobriga as described above. Plaintiffs attempt to argue that the continuing wrong doctrine applies to toll the statute of limitations. Not so. Plaintiffs claim that the wrong alleged here – "Defendants' use of Plaintiffs' images in Midnite Rodeo advertising without consent" – "is not complete; rather, it is ongoing as of the date of this response because the advertisements with Plaintiffs' images remain published and accessible to the public." (Document No. 14, p. 3). They argue that "their causes of action would not have accrued until Defendants removed the advertisements and stopped using their images." Id. at p. 4. The continuing wrong doctrine in North Carolina is "an exception to the general rule that a claim accrues when the right to maintain a suit arises." Birtha, 727 S.E.2d at 7 (internal quotations and citations omitted). "For

10

the continuing wrong doctrine to apply, the plaintiff must show a continuing violation by the defendant that is occasioned by continual unlawful acts, not by continual ill effects from an original violation." Id. (internal quotations and citations omitted). "Courts view continuing violations as falling into two narrow categories." Id. (internal quotations and citations omitted). The first category applies "when there has been a longstanding policy of discrimination." Id. (internal quotations and citations omitted). Obviously, that category does not apply here. The second category arises when "there is a continually recurring violation." Id. (internal quotations and citations omitted). That second category has been used "narrowly." Id.

The undersigned finds that in this case, Defendant's initial wrong of allegedly publishing Plaintiffs' images to their social media page is the relevant act for starting the statute of limitations clock. The alleged fact that Plaintiffs' images still remain on social media is a continual ill effect of the initial violation – for there has been no alleged new activity by Defendants to restart the clock. By Plaintiffs' own language, they are not alleging that Defendants were posting *new* images of Plaintiffs or that they were resharing the original posts – just that the original posts remain online. This is not the kind of case in which there is a "series of wrongful acts" that would occasion application of the continuing wrong doctrine – there were some acts, that occurred on discrete dates, and it is those dates that control the statute of limitations clock here. McKinney v. Eshleman, 2021 WL 4860007, at *3 (N.C. Ct. App. Oct. 19, 2021). The undersigned finds that the continuing wrong doctrine does not apply.

**2. Claims Against the Scoggins Defendants**

Defendants argue that the claims against Defendants Sean Scoggins and Paul Scoggins must be dismissed because the only way to hold a member of a limited liability company ("LLC") liable for the affairs of the business is to pierce the corporate veil. (Document No. 12-1, pp. 4-5).

11

Defendants contend that Plaintiffs have "not alleged any facts that would support piercing the corporate veil." Id. at p. 5. Plaintiffs, on the other hand, contend that the Scoggins Defendants can be held liable for the wrongful acts because "whether or not veil piercing will be appropriate in this case is a fact-intensive inquiry based on…the individual defendants' domination and control over Midnite Rodeo, LLC, which has been alleged." (Document No. 14, p. 7). They claim that they are "entitled to discovery." Id. at p. 8. Furthermore, Plaintiffs argue that "it is well settled" – irrespective of corporate veil-piercing – that for claims "under the Lanham Act, a corporate officer may be held personally liable where he is the 'moving, active conscious force behind [the defendant corporation's] infringement." Id. (citing Cartier v. Aaron Faber, Inc., 512 F. Supp. 2d 165, 170 (S.D.N.Y. 2007)). It seems then, that there is a dispute about the proper legal framework to apply in analyzing whether Plaintiffs have properly stated claims against the Scoggins Defendants.

### A. State Law Claims (Claims 3-8)[3]

The undersigned finds that the analysis is different with respect to the Lanham Act claims (claims one and two) than it is with respect to the other state law claims (claims three through eight). With respect to the state law claims, whether dismissal of the claims against the Scoggins Defendants is appropriate depends upon whether Plaintiffs have adequately pleaded facts that would support piercing the corporate veil. "The general rule is that in the ordinary course of business, a corporation is treated as distinct from its shareholders." United States v. Godley, 3:19-CV-202-RJC-DSC, 2020 WL 4507324, at *5 (W.D.N.C. Aug. 5, 2020) (quoting State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 666 S.E.2d 107, 112 (N.C. 2008)). "That general rule

---

[3] The undersigned has recommended dismissal of the negligence, conversion, unjust enrichment, quantum meruit, and misappropriation claims of Plaintiffs Valencia, Geiger, Pepaj, Rockwell, Canas, and Nobriga. Thus, the analysis about whether Plaintiffs have plausibly pled allegations such that piercing the corporate veil is appropriate applies to those state law claims for which dismissal has not been recommended.

12

applies equally to a limited liability company and its members." Godley, 2020 WL 4507324, at *5. Nonetheless, "[u]nder North Carolina law, courts will disregard the corporate entity and hold an individual liable for the corporation's torts when an individual 'exercises actual control over a corporation, operating [it] as a mere instrumentality or tool.'" Strawbridge v. Sugar Mountain Resort, Inc., 243 F. Supp. 2d 472, 478 (W.D.N.C. 2003) (quoting Postell v. B & D Constr. Co., 411 S.E.2d 413, 419 (1992)). North Carolina courts apply the instrumentality rule to determine whether the corporate veil should be pierced to impose individual liability upon an LLC's member: if a "corporation is so operated that it is a mere instrumentality or alter ego of the…dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State, the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person." Strawbridge, 243 F. Supp. 2d at 479 (quoting Henderson v. Security Mortgage & Fin. Co., 160 S.E.2d 39, 44 (1968)).

There are three elements that must be satisfied before North Carolina courts will pierce the corporate veil to allow imposition of personal liability upon an LLC's member: (1) "[c]ontrol, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own;" (2) "[s]uch control must have been used by the defendant to commit fraud or wrong;" and (3) "[t]he aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." Bear Hollow, L.L.C. v. Moberk, L.L.C., 2006 WL 1642126, at *17 (W.D.N.C. June 5, 2006) (quoting Glenn v. Wagner, 329 S.E.2d 326, 330 (N.C. 1985)).

In their Complaint, Plaintiffs allege that Defendant Sean Scoggins and Defendant Paul Scoggins were the "natural person[s] who directed, supervised, participated in, and [are]

13

Case 3:22-cv-00665-RJC-DCK   Document 16   Filed 09/13/23   Page 13 of 20

responsible for the wrongful acts and omissions complained of." (Document No. 1, p. 4). Furthermore, Plaintiffs allege that "Defendants own, operate, and control Midnite Rodeo social media accounts, including its Facebook, Twitter, and Instagram accounts." Id. at p. 13. Although Plaintiffs' Complaint does not specifically allege an individual's name that "publish[ed] [Plaintiffs'] Images on Midnite Rodeo's website or related social media accounts as part of Defendants' advertising campaign," it seems evident that the Scoggins Defendants, as the only natural persons alleged to be Defendants, are the individuals who conducted such activity. Id. at p. 17.

The undersigned finds that whether Plaintiffs' allegations are sufficient to support piercing the corporate veil to impose individual liability against the Scoggins Defendants with respect to the state law claims is a close call. While the Complaint contains *some* allegations of the control exercised by the Scoggins Defendants over the Midnite Rodeo, the typical buzzwords are not present – i.e., that the Midnite Rodeo was an "alter ego" of the Scoggins Defendants or that there was "complete domination" of the Midnite Rodeo by the Scoggins Defendants. See Bear Hollow, L.L.C., 2006 WL 1642126, at *17. Nonetheless, here, given the early stage of the litigation, the undersigned finds that Plaintiffs' allegations are minimally sufficient to survive dismissal pursuant to Rule 12(b)(6). Thus, the undersigned will respectfully recommend that Defendants' motion to dismiss the state law claims against the Scoggins Defendants be denied. Id. ("piercing the corporate veil depends upon facts that Plaintiffs must obtain through discovery").

### B. Lanham Act Claims (Claims 1-2)

The parties' briefing as to whether individual defendants can be held liable for Lanham Act violations is admittedly sparse. See (Document No. 12-1, pp. 4-5); (Document No. 14, p. 8). Indeed, Plaintiff merely cites a few out-of-circuit cases for the proposition that "under the Lanham

14

Act, a corporate officer may be held personally liable where he is the moving, active conscious force behind [the defendant corporation's] infringement." (Document No. 14, p. 8) (internal quotations and citations omitted). Defendants, on the other hand, appear to lump the Lanham Act claims and the state law claims under the same argument: that the Scoggins Defendants cannot be held liable for any claims because the corporate veil cannot be pierced on the facts alleged. Still, from the undersigned's review of the law, it seems clear that "[i]t is well-established that individual corporate officers and directors can be held personally liable for violations of the Lanham Act." Dao Travels, LLC v. Charleston Black Cab Co., 2015 WL 631137, at *5 (D.S.C. Feb. 13, 2015). The Fourth Circuit seems to endorse this principle, stating "[a] corporate official may be held personally liable for tortious conduct committed by him, though committed primarily for the benefit of the corporation[…t]his is true in trademark infringement and unfair trade practices cases." Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 149 (4th Cir. 1987) (reversing district court's award of summary judgment on Lanham Act claims to individual defendants, explaining that corporate officials can be held individually liable for Lanham Act claims). Therefore, the undersigned will respectfully recommend that Defendants' motion to dismiss Plaintiff's Lanham Act claims against the Scoggins Defendants be denied – irrespective of the veil-piercing analysis on the state law claims, individual defendants can appropriately be held liable for Lanham Act violations, and thus, these claims against the Scoggins Defendants should proceed.

### 3. Lanham Act False Advertising Claim – Whether Plaintiffs Have Validly Stated a Claim For Relief

Defendants argue that Plaintiffs' false advertising claims under the Lanham Act fail to state a claim under 12(b)(6)[4] because the social media posts were not commercial advertisements – a

---

[4] Defendants are not moving to dismiss Plaintiffs' false association claims under the Lanham Act, and thus the undersigned will not conduct any analysis with respect to that claim.

necessary element of proving a Lanham Act claim. (Document No. 12-1, pp. 11-13). Defendants argue that because the test for determining whether a statement is a commercial advertisement requires that a defendant be "in commercial competition with plaintiff," Plaintiffs cannot state a false advertising claim under the Lanham Act here because "none of the Plaintiffs are in commercial competition with any of the Defendants." Id. at pp. 12-13. Defendants state that Plaintiffs are "models, actresses, and/or social media influencers," while Midnite Rodeo "is a night club" and the Scoggins Defendants "are members of Midnite Rodeo." Id. at p. 13.

In order to state a claim for false advertising under the Lanham Act, a plaintiff must satisfy five elements in its pleading:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

Scotts Co. v. United Indus. Corp., 315 F.3d 264, 272 (4th Cir. 2002) (internal citations omitted); see 15 U.S.C. § 1125(a)(1)(B). Defendants focus on part of the first element – whether the social media posts can be considered "commercial advertisements."[5] "Because the Fourth Circuit Court of Appeals has not opined on the meaning of [what constitutes a commercial advertisement], many courts in this Circuit and others have relied upon a four-part test derived from the case of *Gordon & Breach Science Publishers v. American Institute of Physics*, 859 F. Supp. 1521 (S.D.N.Y. 1994)." Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc., 193 F. Supp. 3d 556,

---

[5] Defendants do not appear to contest that Plaintiffs have satisfied the other basic elements of a false advertising claim, and thus, the undersigned will not discuss them.

16

570 (E.D. Va. 2016). "Under that standard, commercial advertising or promotion" must satisfy four elements: it must be (1) "commercial speech"; (2) "by a defendant who is in a commercial competition with the plaintiff"; (3) "for the purpose of influencing consumers to buy defendant's goods or services"; and (4) "the representations [] must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." Id. (citing Gordon & Breach, 859 F. Supp. at 1535-36). It is the second element in the test for what qualifies as a commercial advertisement upon which Defendants focus. Since Defendants do not argue that Plaintiffs have failed to satisfy the other elements of the definition of a commercial advertisement, the undersigned will not analyze them.

Some legal background is necessary to understand Defendants' argument. The Supreme Court in 2014 clarified the requirements for statutory standing for false advertising claims under the Lanham Act. The Supreme Court stated that "a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 129 (2014). Specific to the Lanham Act, "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." Id. at 131-32. And, secondarily, a plaintiff's injury must be "proximately caused by violations of the statute." Id. at 132. For false advertising claims under the Lanham Act, "a plaintiff…must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that [] occurs when deception of consumers causes them to withhold trade from the plaintiff." Id. at 133. The Lexmark Court went further in clarifying that the statutory standing principles for Lanham Act false advertising claims were *not* limited to only "the false advertiser's direct competitors." Id. at 136. Indeed, they stated that "although diversion of sales to a direct competitor

17

may be the paradigmatic direct injury from false advertising, it is not the only type of injury cognizable under § 1125(a)." Id. at 138. Thus, when a plaintiff and defendant in a Lanham Act false advertising case are not direct competitors, to have standing, "a plaintiff [simply] must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." Id. at 140.

District courts within this Circuit have reaffirmed this principle that direct competition is not a prerequisite to successful pleading of a false advertising claim under the Lanham Act post-Lexmark. See Handsome Brook Farm, LLC, 193 F. Supp. 3d at 570; Int'l Foundation of Employee Ben. Plans, Inc., 2015 WL 127839, at *3 (D. Md. Jan. 7, 2015). Thus, it is not clear – and the undersigned can find no case law squarely addressing this issue – what the status of the Gordon & Breach case's second element (that a defendant be in commercial competition with plaintiff) is in light of Lexmark's holding. See Handsome Brook Farm, LLC, 193 F. Supp. 3d at 570 (citing Tobinick v. Novella, 2015 WL 1191267, at *5, n.10 (S.D. Fla. 2015) ('After the Supreme Court's decision in *Lexmark*…it does not appear that the second prong of the *Gordon & Breach* test, which requires that the defendant be in commercial competition with the plaintiff, remains good law.')).

Indeed, in the Handsome Brook case, the Eastern District of Virginia specifically examined the question here – whether the test for "commercial advertisement" from Gordon & Breach conflicts with the Lexmark Court's holding that a plaintiff need not be a direct competitor of a defendant to state a valid false advertising Lanham Act claim. The court stated:

> *Lexmark* was discussing standing and expressly disclaimed any view on the primary issue in dispute in this case, i.e., whether the communication at issue was 'commercial advertising or promotion'…[n]onetheless, it would be a perplexing decision by the Supreme Court to conclude that indirect competitors had standing to bring a Lanham Act claim, but those same plaintiffs' claims would

18

> necessarily fail on the merits due to a lack of direct competition. Many post-*Lexmark* cases have seized on that intuitive conclusion and the absence of a direct-competitor requirement in the plain language of § 1125(a)(1)(B) to conclude that such a relationship is not necessary to show commercial advertising or promotion [collecting cases]…Defendant has not presented a single post-*Lexmark* case that finds the absence of a direct-competitor relationship to be dispositive in a Lanham Act claim. In the absence of persuasive authority or direct statutory language to the contrary, this Court agrees with the above authorities; competition among parties at the same level of a distribution chain—i.e., direct competition—is not necessary to state a Lanham Act false advertising claim.

193 F. Supp. 3d at 570 (internal citations omitted). The undersigned agrees with the Handsome Brook court's conclusion – Plaintiffs need not show that they are direct competitors of Midnite Rodeo. Defendants' argument seems to put the cart before the horse – they seem to be arguing about standing, not whether their social media post meets the definition of a commercial advertisement. And, evidently, based on *Lexmark*, Plaintiffs do have standing. They have alleged an injury to their reputation – "Plaintiffs allege that [] the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Midnite Rodeo." (Document No. 1, p. 15). And, Plaintiffs have adequately met their burden of plausibly alleging proximate causation: "[u]nauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images." Id. at p. 14. The undersigned will thus respectfully recommend that Defendants' motion to dismiss Plaintiffs' false advertising claims under the Lanham Act be denied. See Geiger v. C&G of Groton, Inc., 424 F. Supp. 3d 276 (D. Conn. 2019) (denying motion to dismiss Lanham Act claim on remarkably similar facts to the instant case).

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendants' "Motion To Dismiss" (Document No. 12) be **GRANTED in part and DENIED in part**. Specifically, the undersigned recommends that the motion be granted as to the negligence, conversion, unjust enrichment, quantum meruit, and misappropriation claims of Plaintiffs Valencia, Geiger, Pepaj, Rockwell, Canas, and Nobriga. The undersigned respectfully recommends that the motion be otherwise denied, as explained above.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: September 13, 2023

David C. Keesler
United States Magistrate Judge